Jackson, J.,
delivered the opinion of the Court. The demandant, to prove his seizin of the demanded premises, produced a deed of the tenant purporting to convey the same to him ; which was proved and admitted to have been duly executed, acknowledged, and registered. This evidence was, prima facie, sufficient to maintain the issue for the demandant. Such a deed, by force of our statute of conveyances, actually passes the whole estate which the grantor had in the premises, without any other act or ceremony whatever; and the grantee becomes ipso facto seized of all that the grantor could lawfully convey.
The tenant attempted to prove, in his defence, that this deed was originally void, and, of course, that nothing passed by it to the demandant. There is no doubt, that any legal evidence to this point would be admissible under this issue. * The deed relied on by the demandant not being set forth nor mentioned in the declaration, as it could not regularly have been, the tenant could not plead any matter in avoidance of it; and of course he may give such matter in evidence under this general issue. The fact, on which the tenant relies for avoiding the deed, is, that it was made upon a usurious contract; or, to state the ground of defence more precisely, that this deed was, in the language of the statute of usury, “ a contract, mortgage, or assurance, made for the payment of money lent upon, or for, usury, whereupon, or whereby, there was reserved or taken above the rate of six per cent, by the year.” If this point were duly proved, it would certainly avoid the deed.[†
In making out this defence, the first step is, to prove that the deed was “a mortgage, or assurance, made for the payment of money lent.” Unless it was so, the question of usury does not arise. The deed itself does not purport to be of that description. On the con trary, it is in the usual form of deeds for the absolute conveyance ol real estate. It is perfectly clear, intelligible, and unambiguous ; and, if it expresses the true intent and meaning of the parties, it certainly is not a mortgage, nor an assurance of any kind for the payment of money. There was no other deed or writing between the parties, *357 tending in any manner to control, explain, or alter this legal effect and operation of the instrument in question.
The tenant then offers parol evidence, to prove that the convey anee, although absolute on the face of it, was not, in truth, an abso lute conveyance ; that the contract or agreement, upon which the deed was made, was not an agreement for the purchase and sale of land, but for the loan and repayment of a sum of money ; and that the deed was made upon an express condition, that it should be void, or that the grantee should reconvey the granted premises, upon the repayment of the money within a certain time. On stating the point in this manner, and omitting for the present all consideration of the rate of interest, at * which the money is supposed to have been lent, no one would doubt that such evidence is inadmissible. An agreement to that effect, even if made in writing, and signed by the grantee, would not, unless it was under seal, operate as a defeasance of the deed, nor in any manner affect the absolute title which the grantee had acquired in the land. But such an agreement, if not reduced to writing, would have no effect whatever. It would neither make the conveyance a conditional one ; nor would it bind the grantee to reconvey the premises, or to account for the proceeds, or the value of the land. The admission of such evidence would violate the fundamental principle, recognized by this Court in the case of Stackpole vs. Arnold, (3) “ that deeds and specialties cannot be explained, or varied in their signification, by parol evidence, if the terms made use of in the instrument are capable of a sensible explanation of themselves.”
The question, then, is, whether the rate of interest, at which the money is supposed to have been lent, makes any difference in such a case. The parol evidence would tend to explain or vary the import and effect of the deed, as much if the loan were proved to be at the rate of seven per cent, as if it were at the rate of six. The statute of usury has not rescinded, nor in any manner modified, the rules of evidence before mentioned. The intention of the legislature was, to render void every usurious contract ; but they have left it to be ascertained, as in other cases, whether there is a contract for the loan and repayment of money, before the provisions of the statute can apply. The tenant in the case at bar has not proved, nor offered any legal evidence to prove, that the deed in question was made upon a contract or agreement for the loan and repayment of money. If the deed is truly what it purports to be, the statute of usury does not affect it ; and the tenant is not permitted to prove it to be otherwise by parol evidence, which would tend to control, explain, or alter its clear and manifest import and effect.
*358 * There is another view in which this case presents itself, and which leads to the same result. The evidence offered by the tenant would not, if admitted, have proved that his conveyance was a mortgage. There was no condition in the same deed, nor in any other; and there was no mutuality in the supposed contract, inasmuch as the tenant was under no obligation to repay the money said to have been lent. The evidence, then, would tend only to prove, that the conveyance was made in trust, that the grantee should reconvey the land to the grantor, on the performance of a certain condition on his part. But such trusts, by the express provisions of our statute of conveyances, must be manifested and proved by some writing signed by the party ; or else they are utterly void and of no effect. (4) The nature and effect of the trust would make no difference in the application of this statute. If the tenant had offered to prove, by parol testimony, that his conveyance was made without any valuable consideration, and in trust that the grantee would permit him to receive the rents and profits, and, upon his death, would convey the premises to his heirs, or to whomsoever he should appoint; or if the trust had been, that the grantee would reconvey the premises to him, upon payment of a certain sum of money, with lawful interest; the defence, in either case, would certainly have appeared not less meritorious and equitable, than that which was attempted on this trial. Yet such evidence would most clearly be inadmissible. Of whatever description the trust may be, excepting only such as result by implication of law, the statute is imperative, that it shall not be proved, unless by some writing signed by the party.
The consequences that would flow from the admission of such testimony serve to confirm the opinion which we have thus drawn from the statute of conveyances, and the general rules of evidence. If testimony of this kind were admissible, there would be no security in any conveyance that could be made, either of real or personal estate. * Though the conveyance were perfectly fair and legal, and accompanied with all the usual solemnities and documents, still the grantor might always defeat it, by procuring evidence of a condition, or trust, not apparent upon the deed. It is true, that the maker of a bond or mortgage may, in like manner, procure evidence of usury in the contract, when, in truth, there was none. But, in such case, the other party is originally on his guard, and may, by proper precaution, prevent or defeat such an attempt. When a man loans money, and takes a mortgage or other security for the repayment of it, as he understands from the first that he may be compelled to bring an action upon the contract, he will 'urnish himself with the necessary evidence to prove it. But, when *359 one is bargaining for the purchase of a bale of goods, or a piece of land, he is not thus on his guard. He does not think of taking witnesses to the whole transaction ; because, if he makes the purchase, it is understood to be sufficiently proved by the deed of conveyance, or by the bill of parcels and delivery of the goods. But even if the purchaser should be supposed to take the same precautions as the mortgagee, still he may, without any fault or laches on his part, lose all his evidence, before he is aware that it will be wanted. When a man has lent money, it is his own folly if he neglects to enforce the payment of it until all his witnesses are dead. But, when one has made an absolute purchase, he has only to take possession of the land or the goods purchased, and can take no measures to prove his title in a course of law. The action, if any, is to be brought by the other party, or, at least, the first step is to be taken by him, in case of any dispute concerning the title ; and he may purposely delay it until all those who might detect his fraud can no longer be produced against him. If such evidence is admissible at all, it may extend back to an indefinite length of time, when not prevented by some statute of limitations. A man, therefore, who had made a bill of sale of his ship ten years'ago, might take possession of it to-day, *in whose hands soever it should be found, and, on proving that his sale was made on an usurious agreement, he would be entitled to hold the ship. This right, if it exists at all, would endure as long as the chattel continued in existence.
As to real estate, the grantor or his heirs, by bringing a writ of right, might go back forty years. On proving usury in any conveyance, within that time, by the demandant or his ancestor, he would recover the land against the grantee, or any assignee of his, however remote. For, if the statute of usury applies to the contract, it renders it merely void. It is considered, in all respects, as if it had never existed. It would not, therefore, be enough, that a purchaser of land knew his own contract to be legal and valid ; he must be certain, that every successive sale of the land for forty years preceding had been likewise untainted with usury. All the common indicia of property would be of no use to him. The deeds might all be perfectly regular. The possession might have uniformly accompanied this apparently good title. The former owner might have lived in the neighbourhood for thirty-nine years, and have seen, during all that time, the possession thus accompanying the successive conveyances, without suggesting a doubt of the title ; and after all this, he might recover the land against the last purchaser, by parol evidence of a sect et negotiation, made forty years before, between himself and his original grantee.
If, in the present case, the conveyance to the demandant had been in form a mortgage, he would, after a judgment, or an entry in *360 pursuance of the statute, and a peaceable possession for three years, have held the land, without any possibility of having his title impeached, upon an allegation of usury in the original conveyance. But when one has made a bona, fide purchase of land, and has taken an absolute conveyance, not less than forty years’ quiet possession would secure him or his assigns against such an attempt to destroy his title.
* It makes no difference, whether the vendor, in such a case, brings an action against the purchaser to recover the land or goods sold ; or regains the possession in some other manner, and so causes the purchaser to bring the action against him. In either case, he is virtually the actor or plaintiff. He is reclaiming the goods or land which he has sold, relying on an alleged defect in the conveyance. The object of his suit or claim is not to enforce the performance of an executory contract; but to rescind and annul a contract which has been executed. Even when goods have been pawned to secure the payment of money lent on an usurious contract, the former owner is not permitted to treat the conveyance as merely void ; and he cannot recover his goods, without paying or tendering the money really lent to him, with the lawful interest. (5)
The opinions now expressed are not opposed by any authorities that we are apprized of, unless it be the general proposition, contained in many different books, and copied successively from one into another, (6) that a fine levied, and even a judgment recovered, in pursuance of an usurious contract, may be avoided by an averment of the corrupt agreement ; and it may be fairly inferred, that a deed, executed in the common form, for the conveyance of land, may be as easily avoided for the same cause. It remains, then, to consider, under what circumstances a fine or judgment may be avoided.
As to a fine, in examining the books before mentioned, and tracing the proposition to its source, we find but one adjudged case on the point. That is the case of Dodd vs. Ellington, in 1 Roll’s Rep. 41, reported also in Brownl. & Gouldsb. 191, under the name of Burclacy vs. Ellington. It was an action of replevin ; and the plaintiff, in his replication to the avowry, set forth an indenture of bargain and sale between himself and the defendant and his wife, by which the defendant and his wife granted to the plaintiff certain land in fee, and a fine levied accordingly. The defendant had oyer of the indenture, upon wdtich it * appeared, that the grant was upon condition; and he then pleaded the statute of usury, alleging that the plaintiff, in addition to the lawful inter *361 est secured by the contract, had also the profits of the land. The plaintiff answered, that it was part of their agreement that the defendant should receive the profits of the land, until breach of the condition ; upon which the defendant demurred. The defendant contended, that, as the land was conveyed to the plaintiff, the right to take the profits followed of course, and, therefore, that he could not aver a parol agreement that the defendant should take the profits. But the Court thought the surrejoinder good, and gave judgment for the plaintiff. Tn this case, no question was made, whether the defendant might aver the condition upon which the conveyance was made ; and no such question could arise, because the condition was expressed in the indenture itself. It seems to have been a mortgage in fee, of the kind commonly used in this State. The mortgaged premises being originally the property of a feme covert, a fine was necessary to perfect the conveyance. But this fine, although unconditional in itself, was made according to the indenture, and was undoubtedly mentioned in it. The indenture was to lead the uses of the fine, and both together made but one conveyance. This case, then, at most, would prove, that a mortgage, in which a fine is levied as part of the assurance to' the mortgagee, may be avoided for usury, as well as if made by any other mode of conveyance.
As to avoiding a judgment by an averment that it was founded upon an usurious contract, it is to be observed, that the books cited speak of a judgment suffered in pursuance of an usurious contract, and when it is part of the agreement to have a judgment. On this point, also, we find but one adjudged case, that of Harning vs. Castor, which is briefly stated in the argument of the Earl of Oxford's case, printed at the beginning of 1 Rep. in Chanc. This report gives no more of the case than is stated in Finer, in the place before cited ; and it must undoubtedly refer *to a judgment by confession, on a bond and warrant of attorney. Such a judgment in the English practice is frequently subject to a defeasance on the payment of a smaller sum, like a bond or mortgage ; and one object of it, in every instance, is, that the creditor may have a kind of lien on the lands of the debtor, as an additional security for the debt. On this account, it may perhaps have been considered like a mortgage, or any other common assurance, made on an usurious contract, and liable to be avoided by an averment of the usury in an audita querela, or in a plea to a scire facias on the judgment. This case, then, would only prove, that, when a judgment is suffered as part of the assurance or security for the future payment of money lent on an usurious contract, the judgment may be avoided in like manner as any other security taken on such a contract.
But, even in this restricted sense, the case of Harning vs. Castor *362 is not law, and it has been repeatedly overruled. It is now well settled, that the debtor cannot avoid the judgment by any such plea or averment; although the courts may, in their discretion, order the warrant of attorney in such case to be delivered up, and the judgment to be set aside. (7) On the other hand, if the case of Harning vs. Castor is to be understood of a judgment rendered in invitum in the usual course, the position is still more clearly incorrect. It is contrary to the established principle, which applies to all judgments of the kind last mentioned, that a judgment debtor shall plead nothing to a scire facias, nor aver any thing in an audita querela, which he might have pleaded in the original action. This point has been repeatedly decided, in reference to this very defence of usury, in the English courts; (8) and the same principle has been recently recognized by this Court. (9)
There is manifestly nothing in either of these two cases, when rightly understood, to show, that a deed, purporting to contain an absolute conveyance of land, can be avoided or controlled in its construction by an averment, or by *parol evidence, of a condition or trust not expressed in the deed. We are satisfied, for the reasons before given, that the evidence offered in this case was rightly rejected.

Judgment according to the verdict.

[Stark. on Ev. Part IV., 481. — Hale vs. Jewell & al., 7 Greenl. 435. — But see Gilchrist vs. Cunningham, 8 Wend 641. — Roach vs. Cosine, 9 Wend. 227. — Ed.]

 See Rev Stat Chap. 35, § 2, by which it is enacted, that no contract or assurance for the payment of money, with interest at a greater rate than six per cent., shall be thereby rendered void. — Ed.]

 11 Mass Rep. 27.

 Stat. 1783, c. 37, § 3.

 Fitzroy vs. Gwillim, 1 D. & E. 153.

 3 Co. 80. — Jenk. Cent 254. — Vin. Abr. Usury, pl. 3, 4. — Bac. Abr. Usury, E — 1 Hawk. P. C c. 82, § 50.

 Cas. Temp. Hardw. 233. — Cowp. 727. — 1 B. & P. 270.

 Cro. Eliz. 25, 588. — Gouldsb. 128. — 1 Sid. 182. — Cas. Temp. Hardw. 233.

 Thatcher & al., Ex'rs., vs. Gammon, 12 Mass. Rep. 268.