# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF HAMPDEN, SEPTEMBER TERM 1865, AT SPRINGFIELD.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. REUBEN A. CHAPMAN, ⎬ Justices.
Hon. HORACE GRAY, Jr., ⎭

---

CHARLES O. NEWTON & another *vs.* SOLOMON A. FAY.

A bill in equity may be maintained to redeem shares in the capital stock of a corporation which have been transferred by an instrument absolute in its terms, upon parol proof that in reality the transfer was made only as collateral security for a debt.

CHAPMAN, J.   This is a bill in equity to redeem certain shares of stock of the Otis Manufacturing Company and of the Springfield Fire and Marine Insurance Company, which the bill alleges were transferred by Jacob B. Merrick, the plaintiff's intestate, to the defendant, as collateral security for a note made by Merrick to the defendant.   The answer admits that the defendant holds the stock of the Otis company as alleged in the bill, and there is no controversy in respect to that stock ; but it denies that the stock of the insurance company was transferred to him as collateral security, and says that the conveyance of it to him by

Merrick was intended to be an absolute sale or gift. On an issue framed to try this question before a jury, it appeared that the transfer of the stock was in the usual form of an absolute transfer, and the plaintiffs were permitted to prove by oral evidence that it was intended to be a security for the note, and was founded on no other consideration. The question now presented is, whether this evidence was admissible.

It is not contended by the defendant's counsel that the provision of Gen. Sts. *c.* 68, § 13, affects the question. That provision is, that "in transfers of stock as collateral security, the debt or duty which such transfer is intended to secure shall be substantially described in the deed or instrument of transfer. A certificate of stock issued to a pledgee or holder of such collateral security shall express on the face of it that the same is so holden ; and the name of the pledger shall be stated therein, who alone shall be responsible as a stockholder." The obvious purpose of this section is to enable the pledgee to hold the security without being liable for the debts of the corporation or to taxation for the property ; and if it were to be construed as excluding all other methods of conveying stock as collateral security, it would exclude evidence of a separate defeasance in writing. It was not framed with a view to that question, but altogether *alio intuitu.* It is to be noticed that it speaks of such a transfer of stock as a pledge, though the general property in the stock apparently passes to the vendee. The ordinary distinction between a mortgage and a pledge is, that by the former the general property passes, while by the latter it does not, but merely a special property passes. It is held in New York that a transfer of stock as collateral security is to be regarded as a pledge rather than a mortgage. The reason assigned is, that in order to constitute a pledge the possession must pass, and possession of stock cannot be transferred except by a transfer of the stock itself. A delivery of the scrip or certificate does not transfer the stock. The owner usually writes on his certificate a transfer very much like a bill of parcels, or a power of attorney to some one to make the transfer, and the papers which complete the possession in the vendee are made by the officers of the

corporation.   On account of this peculiar character of the prop-
erty, it was formerly doubted whether it could be the subject of
a pledge.   But it is now held that it can be, and it is considered
to be more in accordance with the intention of the parties to
treat it as a pledge than as a mortgage.   *Wilson* v. *Little*,
2 Comst. 443.   *Allen* v. *Dykers*, 3 Hill, 593.   *Dykers* v. *Allen*,
7 Hill, 497.   *Vaupell* v. *Woodward*, 2 Sandf. Ch. 143.   The
same doctrine seems to be recognized in Pennsylvania.   *Gilpin*
v. *Howell*, 5 Penn. State R. 41.   In New York it is also applied
to the transfer and delivery of commercial paper.   *White* v. *Platt*,
5 Denio, 269.

If regarded as a pledge, it is more in the nature of a trust than
if regarded as a mortgage.   The principal reason assigned for
not regarding a mortgage as strictly a trust is, that the mort-
gagee has a property in the thing which he may make absolute
in case the condition is not performed, by foreclosing the right
of redemption.   But the pledgee cannot do this.   If the debt or
duty is not discharged, he must avail himself of the security by
selling the thing pledged, and not by foreclosure; and he holds
the avails of the sale in trust to discharg the debt or duty, and,
if any balance remains, to pay it to the pledger.   Gen. Sts.
*c.* 151, §§ 9, 10.

The practice of taking transfers of stock as collateral security
is very general among all classes of business men and moneyed
corporations; and in a large proportion of cases the transfer is
absolute, and the purpose and consideration of the transfer are
evidenced by mere oral agreement.   The question raised in this
case is, therefore, of great practical importance.

The rule relied on by the defendant, that parol evidence is
inadmissible to prove that a sale or conveyance in writing which
is absolute in its terms was not intended to be absolute, but was
given as a pledge or mortgage, is well established in respect to
actions at law, and this court have so held in *Harper* v. *Ross
ante*, 332.   It does not, however, apply to a bill of parcels.   *Haz
ard* v. *Loring*, 10 Cush. 267.   *Jewett* v. *Warren*, 12 Mass. 300
*Hildreth* v. *O'Brien, ante,* 104.

But this is a suit in equity, and it is therefore important to

inquire what is the rule which courts of equity have applied to this subject. If a pledge or mortgage of property were to be regarded merely as a trust, the evidence would be admissible, for it is well settled that, since the statute of frauds as well as before, a trust of personal chattels may not only be created but if necessary established and proved by mere parol declarations. Hill on Trustees, 57, and cases there cited. Some of the cases are very strong. In *Kingsman* v. *Kingsman*, 2 Vern. 559, the defendant held property by an absolute legacy, and a trust was decreed on the strength of his admissions made in the presence of several witnesses. *Nab* v. *Nab*, 10 Mod. 404, is another strong case of the same character. But a mortgage is not regarded as strictly a trust, and no case has been found where the question has been discussed in respect to a mortgage or a pledge of a chattel. The cases which have come under discussion have been formal conveyances of real estate, and it seems to be well settled as a principle of equity jurisprudence in the courts of equity in England, in the United States courts, and in some of our state courts, that oral evidence is admissible in a suit in equity to prove that a conveyance of real estate, absolute in its terms, was intended as a security for a debt, or an indemnity against a liability, and that upon such evidence a decree of redemption will be made.

The policy of courts of equity has been from the earliest times to protect debtors, whom they regard as the weaker party, against being wronged or oppressed by creditors, whom they regard as the stronger party. Their method of interference has been by preventing the creditor from maintaining his title according to the legal effect of his conveyance whenever it was inequitable for him to do so. Therefore it was held in *Howard* v. *Harris*, 1 Vern. 190, that if a mortgage is made by its terms irredeemable, or the redemption is restricted, such restrictions are disregarded. In *Spurgeon* v. *Collier*, 1 Eden R. 55, the same doctrine was held, and Lord Northington said that a man will not be suffered in conscience to fetter himself with a limitation or restriction of his time of redemption. In *Vernon* v. *Bethell*, 2 Eden R. 110, parol evidence was admitted to prove that an

absolute conveyance of an equity of redemption of real estate was made as security for a loan and for no other consideration, and the vendor was permitted to redeem. The court said that necessitous men are not, truly speaking, free men, but to answer a present exigency will submit to any terms that the crafty may impose upon them. When such parol evidence has been admitted, it has not been regarded as inconsistent with the statute of frauds. In *Walker* v. *Walker*, 2 Atk. 98, Lord Hardwicke said it had nothing to do with the statute of frauds. In *Kunkle* v. *Wolfersberger*, 6 Watts, 126, Gibson, C. J. said, the proof raises an equity consistent with the writing. It seems to be regarded as an inquiry into the consideration of the sale, for the purpose of doing equity between the parties. The rule on this subject and the reason of it are fully and clearly stated by Mr. Justice Curtis, in *Russell* v. *Southard*, 12 How. 139. He says : " To insist on what was really a mortgage as a sale is in equity a fraud which cannot be successfully practised under the shelter of any written papers, however precise and complete they may appear to be." He cites several English as well as American authorities to sustain this position. In the prior case of *Morris* v. *Nixon*, 1 How. 126, the same doctrine had been before held, and in *Babcock* v. *Wyman*, 2 Curtis C. C. 386 ; *S. C.* 19 How. 289 ; it was reaffirmed. The case of *Russell* v. *Southard* came up from Kentucky, and Mr. Justice Curtis says : " It is suggested that a different rule is held by the highest court in Kentucky. If it were, with great respect for that learned court, this court would not feel bound thereby. This being a suit in equity, and oral evidence being admitted or rejected not by the mere force of any state statute, but upon the principles of general equity jurisprudence, this court must be governed by its own views of those principles." But he cites the case of *Edrington* v. *Harper*, 3 J. J. Marsh. 355, where it was held that the fact that the real transaction between the parties was a borrowing and lending will, whenever or however it may appear, show that a deed absolute on its face was intended as a security for money, and whenever it can be ascertained to be a security for money, it is only a mortgage. Mr. Justice Story had held the same doctrine

at a still earlier period. He held that parol evidence was admis-
sible to show that an absolute deed was intended as a security
for money, and that such a deed should be treated as a mort-
gage, whether the defeasance was omitted by fraud, mistake or
accident, or by design, upon mutual confidence between the par-
ties; for he says the violation of such an agreement would be a
fraud of the most flagrant kind, originating in an open breach
of trust, against conscience and justice. *Taylor* v. *Luther*,
2 Sumner, 228. *Jenkins* v. *Eldredge*, 3 Story R. 293. The
same rule has long been held in New York and on the same
ground. *Strong* v. *Stewart*, 4 Johns. Ch. 167, was decided by
Chancellor Kent on the strength of several English authorities
cited by him. See also *Slee* v. *Manhattan Co.* 1 Paige, 48; *Van
Buren* v. *Olmstead*, 5 Paige, 9. In the latter case the rule is said
to be well settled. After considerable discussion it was settled
that the rule was limited to cases in equity, and did not prevail
in courts of law. *Webb* v. *Rice*, 1 Hill, 606. *Hodges* v. *Ten-
nessee Ins. Co.* 4 Selden, 416. But by the code parol evidence
is made admissible both at law and in equity to show that an
assignment, though absolute in its terms, was a security for a
loan or an indemnity against a liability, and is therefore a mort-
gage. *Despard* v. *Walbridge*, 15 N. Y. 374. In *Wright* v. *Bates*,
13 Verm. 341, the court say : " It is well settled law in this state
that a court of chancery will treat an absolute deed of real estate,
given to secure the payment of a debt, as a mortgage, as between
the immediate parties, especially if the grantor continues to re-
main in possession, though the defeasance rests wholly in parol."
But where possession has followed the deed through several
grantees, such evidence is held inadmissible. *Conner* v. *Chase*,
15 Verm. 764. And in this last case Williams, C. J. argues
against the rule itself. In a note to 2 Cruise Dig. (Greenl. ed.)
tit. xv. *c.* 1, § 20, it is said that " in Maine and Massachusetts
the statutes recognize only two modes of creating a mortgage
to which the chancery jurisdiction of the courts extends, namely,
by proviso inserted in the deed, and by a separate deed of de-
feasance. All equitable mortgages created by contract of the
parties seem therefore to be excluded. Relief, if any, in other

cases must be referred to the head of fraud, trust, or accident and mistake." Since the publication of that work relief has been afforded under this head in a case where an absolute deed was alleged to have been intended as a security for a debt, and where the answer and proof showed the intention. *Howe* v. *Russell*, 36 Maine, 115. No case has arisen in this commonwealth where this court could consider whether it would adopt the rule of equity admitting parol evidence to prove that an absolute deed was given as security for a loan or for indemnity. For though the court has had jurisdiction of trusts for many years, yet the jurisdiction has been strictly construed, and has been held not to extend to trusts created by converting a fraud into a trust. *Mitchell* v. *Green*, 10 Met. 101. As a mortgage is not strictly a trust, but the element of fraud is held to enter into the attempt to convert it into an absolute sale, the court could not, prior to 1855, have entertained jurisdiction of such a case. The present case does not require us to decide whether the rule ought to be adopted here in application to a mortgage of real estate.

But in respect to the transfer of stocks, which requires but little formality between the parties, and is often made in the hurry of business, as a bill of parcels is made, and as to which a trust may be created and proved by parol, and which is to be regarded as a pledge rather than a mortgage, when used as a collateral security, we think the principle of equity jurisdiction so fully established elsewhere in regard to instruments much more formally executed ought to be adopted, admitting oral proof as to the consideration and purpose of the transfer, and that, upon the discharge of the debt or duty secured by it, the pledger should be permitted to redeem.

*Decree for the plaintiffs.*

*N. A. Leonard*, for the plaintiffs, cited *Hunnewell* v. *Lane*, 11 Met. 163; *Fletcher* v. *Willard*, 14 Pick. 464; *Alvord* v. *Smith*, 5 Pick. 232; *Hazard* v. *Loring*, 10 Cush. 267; *Champlin* v. *Butler*, 18 Johns. 169; *Kilpin* v. *Kilpin*, 1 Myl. & Keen, 520.

*H. Morris*, for the defendant, cited *Hazard* v. *Loring*, 10 Cush. 267; *Southwick* v. *Hapgood*, Ib. 119; *Rennell* v. *Kimball*, 5 Allen, 356; *Barker* v. *Buel*, 5 Cush. 519; *Walker* v. *Locke*, Ib. 90

*Leonard* v. *Smith,* 11 Met. 330; *Howard* v. *Howard,* 3 Met. 548; *Flagg* v. *Mann,* 14 Pick. 477; *Barrett* v. *Wright,* 13 Pick. 45, *Crocker* v. *Crocker,* 11 Pick. 252; *Hunt* v. *Maynard,* 6 Pick. 489; *Flint* v. *Sheldon,* 13 Mass. 443; *Stackpole* v. *Arnold,* 11 Mass. 27; *Hale* v. *Jewell,* 7 Greenl. 435; *Lund* v. *Lund,* 1 N. H. 40; *Dean* v. *Dean,* 6 Conn. 285; *Meres* v. *Ansell,* 3 Wils. 275.